DAVID N. HAWLEY v. JOHN W. BRUMAGIM, Admin-istrator of the Estate of George Peck, Deceased.

Construction of Contracts.—Where the language of a contract is not ambiguous, but of plain and obvious import, the rule is imperative to follow the language employed in its interpretation.

Identity of Stock.—Where certificates of stock of a corporation, issued to P., were surrendered by H., to whom they had been assigned, and new certificates issued to H. in his own name : held, that this did not affect the identity of the stock.

Appeal from the District Court, Fifteenth Judicial District, City and County of San Francisco.

This was an action against the defendant, as administrator of George Peck, deceased, who in his lifetime sold to the plaintiff " twenty-five shares of Sumner stock, upon Peck's warranty that the stock shall be worth and marketable in San Francisco at two hundred dollars per share on November 27th, 1864." The contract was in writing, and was in the terms following, to wit :

" David N. Hawley has this day purchased of me twenty-five shares of the Sumner Gold and Silver Mining Company, located in Cove District, Tulare County, State of California, for the sum of twenty-five hundred dollars, upon my agreement to warrant to him that said stock shall be worth and be marketable at two hundred dollars per share in the City of San Francisco, on the 27th day of November, 1864.

" Said Hawley agrees to keep said stock until that time, and if the same shall not be worth in the market of San Francisco the said sum of two hundred dollars per share, then I agree, in consideration of said premises and of his retaining said stock, to make good the deficiency, and to pay him in gold coin such sum as shall be necessary to make it equal to the said price of two hundred dollars per share.

                                        " GEORGE PECK.

" San Francisco, November 27th, 1863."

On the 27th of November, 1864, the stock was only worth and marketable at twenty dollars per share. Hawley had thirty shares of his own at the time he purchased the twenty-five shares of Peck. He did not sell a share of either until the 27th of November, 1864, but soon after the purchase from Peck he had surrendered the original certificates, which were in the name of Peck, and received new certificates therefor in his own name. He then sold the twenty-five shares at the Board of Brokers, after notice to defendant, (who, by reason of Peck's death in the interval, had been appointed administrator of his estate,) and after his claim for the deficiency had been duly presented to the administrator and rejected, brought suit therefor, and recovered judgment in the Court below.

On the trial, the defendant offered to prove that after the sale by Peck to plaintiff, but before November, 1864, Sumner stock was worth over two hundred dollars in the San Francisco market. The evidence was excluded, under the plaintiff's objection to its relevancy and competency. Defendant excepted. Defendant moved for a new trial, on the ground that the verdict and judgment were not sustained by the evidence and were against law. Motion denied, and defendant appealed from the judgment and the order denying said motion.

*Patterson, Wallace & Stow*, for Appellant.

What is the meaning of the contract sued upon in this case? It bears date November 27th, 1863, and recites that Hawley has purchased of Peck twenty-five shares of Sumner stock, upon Peck's warranty that the stock shall be worth and marketable in San Francisco at two hundred dollars per share on November 27th, 1864. It recites that Hawley agrees to keep the stock until that time, and if the same shall not be worth in the market of San Francisco the said sum of two hundred dollars per share, Peck agrees to make good the deficiency, and pay him, in gold coin, such sum as shall be necessary to make it equal to the price of two hundred dollars per share. It is signed by Peck. It is *not signed by Hawley.* Hawley has thereby purchased the twenty-five shares of stock, and is the absolute owner of them. Is it not evident that the contract on the part of Peck means merely to guaranty that Hawley shall be able to obtain two hundred dollars per share for the stock *on or before* November 27th, 1864? Suppose that the stock is worth two hundred dollars per share from the twenty-seventh November, 1863, until the *twenty-sixth* November, 1864, and *on the next day falls below that sum?* Would there be a breach of this agreement on the part of Peck? It is a rule in the construction of contracts, that the object to be effected by it, and the intent and purpose of the parties, shall be looked to in order to ascertain the purpose of the contract. (Chitty on Contracts, 79.) Will this Court hold that the 27th November, 1864, and *none other*, was the *precise day* upon which the value of the stock was to be ascertained, or will it not rather conclude, that if Hawley could get two hundred dollars per share for the stock at any time *on or before* that day, the covenant of Peck was satisfied? Would not this be construing the contract in its plain, ordinary and popular sense? (Chitty on Contracts, 85.) Why refer to that *particular day*, and exclude all other days intervening? It will be observed that Mr. Hawley did not bind himself to keep the stock at all for any

length of time whatever; he owned it *absolutely*, and if he had sold it, at any price whatever, on the next day after the contract was made, Peck could not have complained of him for doing so. Again, the words of the promise itself are that " said Hawley agrees to keep said stock until that time, and if the stock shall not be worth in the market," etc., " then I agree to make good the deficiency," etc. We submit, that this means that the stock shall, at some time *during the year*, be worth the sum of two hundred dollars per share. (Chitty on Contracts, 10th American edition, p. 78.)

The defendant offered to prove, that in May, 1864, these shares were worth two hundred and twenty-five dollars per share in the San Francisco stock market, and that the respondent Hawley knew the fact, and refused to sell these shares at that price, and the Court below excluded the evidence. The respondent Hawley did not "keep said stock" until November 27th, 1864, and therefore he was not entitled to recover at all events. Instead of keeping *these shares*, thus distinctly identified and segregated by the contract from all other shares or certificates, the respondent, as early as December, 1863, surrendered up these shares in connection with certain other shares that he owned, on the 8th day of December, 1863, obtained in lieu of all of them fifty-five other shares of stock of the company, evidenced by a certificate which bore date December 8th, 1863, and was numbered one hundred and twenty-three. It is submitted, that by doing this the respondent destroyed the identity of the twenty-five shares to which the covenant of Peck was alone applicable.

That the respondent cannot deal thus with the stock and still enforce the guaranty, is shown by the case of *Nourse* v. *Prime*, 4 Johns. Ch. 495, where the distinction is drawn between stock that has no means of identification, (as the old United States Bank issued to bearer,) and stock " defined and designated so as to be distinguished," etc. (And see *Nourse* v. *Prime et al.*, 7 Johns. Ch. 80. See, also, *Allen* v. *Dykers*, 3 Hill, 596; *Wilson* v. *Little*, 2 Comstock, 449; *Seymour* v. *Wyckoff*, 10 N. Y. 213.)

*Edward Tompkins*, for Respondent, argued that the contract declared on was unambiguous and certain, and admitted of but one interpretation, which had been given to it in the Court below ; that the mere change in the evidences of the stock—as an exchange of old for new certificates—did not affect the identity of the stock.

By the Court, SANDERSON, J.:

We cannot agree with counsel for the appellant as to the construction of the contract. Its language is not at all ambiguous, but of plain and obvious import. In such a case we can but follow the language of the contract. We are not permitted to insert words not put there by the parties themselves. To do so would be to make contracts, not to read them. The agreement on the part of Peck is not only in terms not " on *or before* " the 27th day of November, 1864, but the agreement on the part of Hawley shows, with all the certainty of a direct statement, that the words " or before " were not intended, for it makes it obligatory upon Hawley to keep the stock, or not to part with it, until the 27th of November, 1864. Not only that, but his keeping it until that time is expressly stated as a part consideration for the promise of Peck to make good the deficiency. It would seem to have been the understanding that Hawley should be made sure of getting two hundred dollars a share for the stock, in any event, with the privilege of holding it until the 27th of November, 1864, for a yet higher market value.

Such being the contract, it follows that testimony offered by the defendant to show that the stock was worth two hundred dollars and over per share in May, 1864, was properly rejected.

There is nothing in the second point made by the appellant. Hawley, as the testimony shows, neither exchanged nor sold the stock prior to the 27th of November, 1864. He

surrendered the certificate for the stock which he received from Peck to the officers of the company for cancellation, and took other certificates therefor in his own name; but that was necessary in order to complete the transfer and make the stock his as against third persons. It was not contrary to the contract, but in keeping with it. Nor did the subsequent cancellations and issues of certificates work any change in the stock itself. The stock remained the same from first to last. Stock is one thing and certificates another. The former is the substance and the latter is the evidence of it.

Judgment and order affirmed.

Mr. Justice RHODES did not express an opinion.