[Crim. No. 2730. In Bank.—March 19, 1925.]

## In the Matter of the Application of GEORGE HAINES for a Writ of Habeas Corpus.

[1] CRIMINAL LAW — ESCAPE — CONSTRUCTION OF SECTIONS 105 AND 106, PENAL CODE.—Under the terms of sections 105 and 106 of the Penal Code, no provision is made for the punishment of misdemeanor prisoners who escape or attempt to escape, but section 107 of said code, as amended in 1923, although prescribing a felonious penalty, is directed to both classes of prisoners.

[2] ID. — STATUTORY CONSTRUCTION — INTENT OF LEGISLATURE — PRESUMPTIONS.—Absurd or unjust results will never be ascribed to the legislature and it will not be presumed to have used inconsistent provisions as to the same subject in the immediate context; and in the interpretation of statutes courts are not bound by grammatical rules, and may ascertain the meaning of words by the context.

[3] ID.—INTENT—SPIRIT OF ACT.—The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute, and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention.

---

2. See 25 R. C. L. 1019; 23 Cal. Jur. 732.

The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.

[4] ID.—CONSTRUCTION OF SECTIONS 105, 106 AND 107, PENAL CODE.— Sections 105 and 106 of the Penal Code cover fully the escape of felony prisoners while undergoing punishment or being conveyed to or from the prison, and section 107 of said code was intended, in the contemplation of the legislature, to take care of all other classifications of escapes or attempted escapes, and it is apparent that the legislature realized that felony prisoners would escape or attempt to escape under other conditions than those embraced in sections 105 and 106.

[5] ID.—STATUTORY CONSTRUCTION—GIVING EFFECT TO STATUTE.—A statute should always be so construed as to give a sensible and intelligent meaning to every part so as to make every provision thereof valid and effective.

[6] ID.—DIFFERENT CONSTRUCTIONS—PUBLIC INTEREST.—Even if a statute might be held to be susceptible to either of two constructions, the court is justified in the public interest in adopting the one favoring the punishment of all escaping prisoners.

[7] ID.—INTENTION OF LEGISLATURE—ASCERTAINMENT OF.—While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words.

[8] ID.—CONSTRUCTION OF SECTION 107, PENAL CODE—AMBIGUITY.—It cannot be maintained, particularly in view of clause 2, that section 107 of the Penal Code, as amended in 1923, is free from ambiguity, for the provision for escapes or attempts to escape while engaged in county work precludes the conclusion that it was intended to apply to felony prisoners.

[9] ID.—SECTION 107, PENAL CODE—CONSTRUCTION.—The omission of section 107 of the Penal Code to identify both classes of prisoners by corresponding phrases will not be held controlling where from the context of the statute it clearly appears that misdemeanor as well as felony prisoners were intended to come within its provisions.

[10] ID.—EXTENT OF PUNISHMENT—DISCRETION.—It cannot be laid down as a rule binding on the legislature that a misdemeanor prisoner who escapes or attempts to escape should not be given felonious punishment. The *kind* of punishment presents a legislative and not a judicial question; it is for the courts or

5. See 25 R. C. L. 1006; 23 Cal. Jur. 758.
7. See 25 R. C. L. 967; 23 Cal. Jur. 734.

state board of prison directors, as the case may be, to determine, within the limits fixed by the legislature, the *extent* of punishment.

(1) 21 C. J., p. 845, n. 7.   (2) 36 Cyc., p. 1111, n. 71, p. 1112, n. 72, p. 1117, n. 16, p. 1129, n. 59, p. 1131, n. 73, p. 1136, n. 25, 26.   (3) 36 Cyc., p. 1108, n. 46, p. 1109, n. 52, p. 1188, n. 57.   (4) 21 C. J., p. 845, n. 7.   (5) 36 Cyc., p. 1106, n. 29, p. 1128, n. 58. (6) 36 Cyc., p. 1107, n. 36, p. 1112, n. 76.   (7) 36 Cyc., p. 1107, n. 30, p. 1108, n. 46.   (8) 21 C. J., p. 845, n. 7.   (9) 21 C. J., p. 845, n. 7.   (10) 12 C. J., p. 890, n. 60.

APPLICATION for a Writ of Habeas Corpus to release the petitioner from the custody of the sheriff. Writ discharged.

The facts are stated in the opinion of the court.

A. J. Ashen, for Petitioner.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General, and Dixwell L. Pierce for Respondent.

LAWLOR, J.—*Habeas corpus.* The facts in the above-entitled matter are stipulated to be as follows:

On or about the fifth day of June, 1924, petitioner, George Haines, was serving a sentence in the county jail of Shasta County, in the city of Redding, under conviction of a misdemeanor, to wit: malicious mischief, and in the custody of an officer, a deputy sheriff, and while engaged in going to county work escaped from the lawful custody of such officer. Subsequently, the petitioner was charged by the district attorney of said county by information with the crime of escaping from the legal custody of an officer, a felony, committed as follows: "That the said George Haines . . . did on or about the 5th day of June, 1924, at the City of Redding, County of Shasta, State of California, wilfully, unlawfully, intentionally and feloniously escape from the lawful custody of an officer, to wit: a deputy sheriff, while engaged in going to county work. All of which is contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the People of the State of California."

Petitioner, by virtue of this charge, was imprisoned, detained, confined, and restrained of his liberty by W. W. Sublett, sheriff of the county of Shasta, at the county jail in said county, and it it was with regard to this custody that this court granted his petition for a writ of *habeas corpus.*

It is contended by petitioner that the charge under which he is held and thereby deprived of his liberty does not constitute a public offense, "inasmuch as, at the time of said alleged escape said George Haines was not a prisoner charged with or convicted of a felony, but was a prisoner convicted of a misdemeanor''; that section 107 of the Penal Code "applies only to prisoners charged with or convicted of a felony. The gist of said section is, 'Every prisoner charged with or convicted of a felony . . . who escapes or attempts to escape . . . is guilty of a felony and is punishable as provided in section 108 of the Penal Code.' In between the words quoted, there appear several relative clauses, all beginning with the word 'who,' and connected by the disjunctive 'or.' It seems apparent that the relative pronoun 'who' in all of said relative clauses, must relate back to the prisoner mentioned in the first part of the section, to wit, a prisoner charged with or convicted of a felony''; that if it were the intention of the legislature to make section 107 apply both to misdemeanor and felony prisoners, "then there would absolutely be no reason why it should have inserted after the word 'prisoner' the words 'charged with or convicted of a felony.' It would have, in such case, used the same expression as used in a prior statute, namely, 'every prisoner,' without any qualifying phrase as to the character of the prisoner''; that the legislature in amending the section in 1923 intended "to provide that a felony prisoner, no matter whether he was confined in the county jail, or in the state prison, or in a county hospital, or in any other place, if he escaped, or attempted to escape, would be guilty of a felony and not, as before said amendment, guilty of a misdemeanor if he escaped from one place, and guilty of a felony if he escaped from some other place''; and that "if it can be said that there is a doubt as to the intent of the legislature, . . . such doubt is dispelled by an examination of the history of the passage of this amendment . . . the bill as first introduced was broad enough to include both felony and misdemeanor prisoners. The bill as amended the

first time was rather ambiguous and probably could have been construed to include both felony and misdemeanor prisoners, but the Assembly by its action clearly indicates that it did not approve the including in said bill even by inference misdemeanor prisoners, and therefore by striking out of the word 'or' and inserting the words 'who is' in lieu thereof, showed its intention to make said section 107 as amended to apply only to felony prisoners."

It is conceded by the respondent that if the act of escaping from the custody of the sheriff by a prisoner convicted of a misdemeanor does not fall within the terms of section 107 of the Penal Code as amended in 1923 (Stats. 1923, p. 270), the sheriff is without authority to hold petitioner for the crime of escaping from his custody since there is no other provision in the penal law of the state which provides a penalty for the act of escaping from the county jail or from the lawful custody of an officer by a prisoner confined or held therein on a misdemeanor charge.

Respondent contends, however, that section 107 is reasonably capable of only one meaning, which is that it applies to *all* prisoners confined in a county jail and that the phrase "charged with or convicted of a felony" in said section is merely descriptive of one class of prisoners to whom the act relates. This contention is based upon the following claims:

1. That prior to the amendment of section 107 in 1923, every prisoner confined in any other prison than the state prison who escaped or attempted to escape therefrom was guilty of a misdemeanor and if the section as amended applies only to prisoners charged with or convicted of a felony the existing law has been repealed, which result is not consistent with a sound policy and will lead to mischief. 2. That the legislative intent to include all prisoners is evidenced by the title of the act which discloses that the purpose of such act is to amend section 107 and not to repeal the existing law and enact a new law destroying "all the vital terms" of the section as it stood before the amendment; by the clause relating to a prisoner "who is engaged on any county road or other county work" which clause is inapplicable to a "felony prisoner" for the reason that the law does not provide that prisoners in the state prison may be required to work upon county roads or other county

195 Cal.—39

work, that the legislature is presumed to have known this and therefore to give effect to this language *all* prisoners must be included within the meaning of the section.   3. That the rule is that statutes must be liberally construed with the object of giving effect to the legislative intent and a sound policy.   4. That the act of escaping is recognized by the common law as *malum in se* and the fact that the legislature has raised the crime from a misdemeanor to a felony by the amendment of 1923 can have "no weight in the matter of judicial construction of the law itself."

The sections of the Penal Code relating to escapes from prison are as follows:

"Sec. 105.   Every prisoner confined in a state prison, for a term less than for life, who escapes therefrom, is punishable by imprisonment in a state prison for a term of not less than one year; said second term of imprisonment to commence from the time he would otherwise have been discharged from said prison."   (Amendment approved 1905; Stats. 1905, p. 723.)

"Sec. 106.   Every prisoner committed to a state prison for a term less than for life, who escapes or attempts to escape while being conveyed to or from or while confined within such prison or while at work outside such prison under the surveillance of prison guards is guilty of a felony and on conviction thereof the term of imprisonment therefor shall commence from the time such convict would otherwise have been discharged from said prison."   (Amendment approved May 9, 1921; Stats. 1921, p. 707.)

As enacted in 1872, section 107 read as follows: "Every prisoner confined in any other prison than the state prison, who escapes or attempts to escape therefrom, is guilty of a misdemeanor."

The legislature in 1923 by "An act to amend section one hundred seven of the Penal Code, relating to escapes and attempts to escape from county jails, city jails and county hospital, and from the custody of the sheriff" declared section 107 to be amended as follows:

"[1] Every prisoner charged with or convicted of a felony who is confined in any jail or prison or an inmate of any public training school or reformatory or county hospital,

"[2] or who is engaged on any county road or other county work

"[3] or who is in the lawful custody of any officer or person,

"[4] who escapes or attempts to escape from such jail, prison, public training school, reformatory or county hospital,

"[5] or from the custody of the officer or person in charge of him while engaged on or going to or returning from such county work

"[6] or from the custody of any officer or person in whose lawful custody he is,

"[7] is guilty of a felony and is punishable as provided in section one hundred eight of the Penal Code." (Stats. 1923, p. 270.)

We have inserted the above numerals in section 107, as amended, for convenience of reference in the discussion of its provisions.

Section 105 as amended in 1905, we have seen, relates to the escape of prisoners confined in a state prison who may under that section and sections 13 and 671 of the Penal Code be sentenced to a term of imprisonment ranging from one year to any number of years not less than one or to life, in terms. Section 106 as amended in 1921, it has been indicated, covers the case of a prisoner committed to a state prison who escapes or attempts to escape while being conveyed to or from or while confined within such prison or while at work outside such prison under the surveillance of prison guards. Under this section and sections 13, 18 and 18a of the Penal Code, the minimum punishment would be six months and the maximum five years in the penitentiary.

These sections are directed to escapes or attempted escapes from the state prison, or escapes or attempted escapes while being conveyed to or from or while confined within such prison or while at work outside such prison. By "work outside" undoubtedly means work done for the state as, for instance, work on the state highways, and not county work.

[1] It is plain from the terms of sections 105 and 106 that no provision whatever is made therein for the punishment of misdemeanor prisoners who escape or attempt to escape and if petitioner's contention that section 107 excludes escapes or attempts to escape by such prisoners be sound, such escapes or attempts to escape by misdemeanor

prisoners are not now punishable at all. In the face of such a prospect an intention not to punish escapes or attempts to escape by misdemcanants should be imputed to the legislature only when all the terms of the amendment studied together clearly call for such an interpretation.

Section 107 before the amendment plainly applied to felony and misdemeanor prisoners; and we have arrived at the conclusion that although section 107, as amended, now prescribes a felonious penalty it is still directed to both classes of prisoners.

Before proceeding to an analysis of section 107 we will state the respective contentions and arguments of the parties pertinent to the rules of construction applying to this proceeding.

In connection with petitioner's claim that section 107 applies only to prisoners charged with or convicted of a felony it is urged in his behalf that the amendment is grammatically correct and free from ambiguity; "that where the language of a statute is not ambiguous, but of plain and obvious import, the rule is imperative to follow the language employed in its interpretation," citing *Hawley* v. *Brumagim*, 33 Cal. 394; *In re Mitchell*, 120 Cal. 384 [52 Pac. 799]; *Davis* v. *Hart*, 123 Cal. 384 [55 Pac. 1060]; *Smith* v. *Union Oil Co.*, 166 Cal. 217 [135 Pac. 966]. To the proposition "that where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others." *McGahey* v. *Forrest*, 109 Cal. 63 [41 Pac. 817], and *People* v. *Doyle*, 13 Cal. App. 611 [110 Pac. 458], are cited.

*Matter of Zany*, 20 Cal. App. 360 [129 Pac. 295], is cited by respondent to the effect "that a statute should always be so construed as to give a sensible and intelligent meaning to every part, to avoid absurd consequences, and if possible, so as to make every provision thereof valid and effective. General terms should be so limited in their application as not to lead to an absurd consequence. *(People* v. *Earl*, 19 Cal. App. 69 [124 Pac. 887].) To arrive at the legislative intent in the interpretation of statutes the original purpose and object of the legislation must be considered. *(Mackey* v. *Mott*, 25 Cal. App. 110 [142 Pac. 1082].) Statutes must be read and considered in conjunction with the legislative intent and then be liberally construed with the

object in view of giving effect to such intent. (*Odell* v. *Rihn,* 19 Cal. App. 713 [127 Pac. 802].) A construction or conclusion plainly not contemplated by the legislature should not be given to a statute if it can be avoided. When a statute is fairly susceptible of two constructions, one leading inevitably to mischief or absurdity and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted. *(San Joaquin & K. R. C. & I. Co.* v. *Stevinson,* 164 Cal. 221 [128 Pac. 924].)

[2] Absurd or unjust results will never be ascribed to the legislature and it will not be presumed to have used inconsistent provisions as to the same subject in the immediate context. The courts will be astute to avoid such results (*Wells Fargo & Co.* v. *Mayor etc. of Jersey City,* 207 Fed. 871]). In the interpretation of statutes courts are not bound by grammatical rules, and may ascertain the meaning of words by the context. (*Cavender* v. *Hewitt,* 145 Tenn. 471 [22 A. L. R. 755, 239 S. W. 767].)

[3] "The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. 'While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words.' Words or clauses may be enlarged or restricted to effectuate the intention or to harmonize them with other expressed provisions. Where general language construed in a broad sense would lead to absurdity it may be restrained. The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they are found in the act." (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 376, p. 721.)

The Code of Civil Procedure provides: Section 1858: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where

there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1859: "In the construction of a statute the intention of the legislature, . . . is to be pursued, if possible; and when a general and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." Section 4 of the Penal Code reads: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." Concerning the latter section petitioner contends that "Although by section 4 of the Penal Code, the rule of liberal construction of statutes applies to penal statutes, nevertheless, the rule of liberal construction does not mean the enlargement of plain provisions of law." To this respondent replies: "In arriving at a proper construction of the statute it is, of course, helpful to recall that the ancient rule that penal statutes are to be strictly construed has no application to the provisions of our Penal Code. (*People* v. *Soto*, 49 Cal. 67; *Snell* v. *Bradbury*, 139 Cal. 379 [73 Pac. 150].) This consideration should serve to dispel any lingering doubt which might be entertained as to the propriety of modification of the literal effect of the words of the enactment by resorting to the history of legislation upon the subject treated and the general legislative intent relating to that and matters of a similar nature."

The first and second drafts of the amendment under review applied to felony and misdemeanor prisoners. We agree with the petitioner that by the final amendment substituting "who is" for "or" between the words "felony" and "confined" as they occurred in the second draft it was intended that the clause "who is" should refer back to the antecedent noun—"Every prisoner charged with or convicted of a felony." And if the section were limited to clauses 1, 4, and 7, and the succeeding words—"who is" in clauses 2 and 3 were not prefaced by the disjunctive "or" denoting classification and exclusion we would be called upon to hold that escapes or attempted escapes of misdemeanor prisoners did not come within the terms of section 107. But, as we shall show, the amendment of the second draft does not

exclude from the operation of the clauses 2 and 3 escapes or attempted escapes by misdemeanor prisoners.

The detailed history of the legislation is as follows: On February 1, 1923, Assemblymen Emme and Graves introduced Assembly Bill No. 939. It was read the first time and referred to the committee on judiciary. (Journal of the Assembly 1923, p. 338.) The printed bill as introduced is as follows:

"An act to amend section one hundred seven of the Penal Code, relating to attempts to escape and escapes from county jails and city jails and from the custody of the sheriff while at work on any county work.

"The People of the State of California do enact as follows:

Section 1. Section one hundred seven of the Penal Code is hereby amended to read as follows:

107. Every prisoner confined in any jail or prison other than the state prison, and every prisoner who is engaged on any county road or other county work, who escapes or attempts to escape from such jail or other prison, or from the custody of the sheriff while engaged on or going to or returning from such work is guilty of a felony."

On April 3, 1923, by "amendment number one" the title was modified and by "amendment number two" the act was amended as follows:

"On page 1 of the printed bill strike out line 3 following the period, lines 4 to 8, both inclusive, and in lieu thereof insert the following:

'Every prisoner charged with or convicted of a felony or confined in any jail or prison or an inmate of any public training school or reformatory or county hospital, or who is engaged on any county road or other county work or who is in the lawful custody of any officer or person, who escapes or attempts to escape from such jail, prison, public training school reformatory or county hospital, or from the custody of the officer or person in charge of him while engaged in or going to or returning from such county work or from the

custody of any officer or person in whose lawful custody he is, is guilty of a felony and is punishable as provided·in section one hundred eight of the Penal Code.' '' (Journal of the Assembly 1923, p. 835.) On April 9, 1923, a motion was made and carried as follows:

"On page 1, line 4, of the printed bill, strike out the word 'or' preceding the word 'confined' and in lieu thereof . insert the words 'who is.' '' (Id., p. 1012.) The substitution was accordingly made and this was the version of the bill when it passed the assembly and was ordered transmitted to the senate. (Id., p. 1142.) The senate passed the bill as thus amended with an amendment of the title. (Id., p. 1488.)

We will now proceed to analyze the amended section.

First, as to the question of punctuation. If a comma or colon had been inserted after the words "every prisoner" or a semicolon following the words "county hospital," as those quoted phrases appear in clause 1, there would be no difficulty in construing the terms of section 107 to apply to both felony and misdemeanor prisoners. Clause 1, we have conceded, is confined to felony prisoners; clause 2 just as clearly applies to misdemeanor prisoners; clause 3 includes both classes of prisoners; clause 4 applies either to felony or misdemeanor prisoners for it includes escapes or attempted escapes from "jail," where misdemeanants may be serving a sentence, as well as from the state prison; clause 5 is the counterpart of clause 2 and like that clause refers exclusively to misdemeanor prisoners; clause 6 uses the expression—from the custody of *any* officer or person and hence covers both classes of prisoners, and clause 7 makes a violation of any of the other clauses a felony and under sections 107, 108, 13, and 18a of the Penal Code imprisonment in the penitentiary may be for any term from six months to ten years and by fine in any amount not exceeding ten thousand dollars.

In conceding that clause 1 refers to felony prisoners we have in mind that such prisoners unless ·admitted to bail are confined in the county jail pending trial after indictment or preliminary examination and after conviction and final judgment until removal to the state prison; or when they

are held by other process connected with a felony. But misdemeanor prisoners, other than those punished by fine alone, after conviction and final judgment must be committed to the county jail (see secs. 17 and 19, Pen. Code) in execution of the judgment.

While section 107 contains the only provision we have found in reference to the detention of felony prisoners in "any public training school," it is probable that the legislature had in view prisoners confined in the state reform schools. Minors between eighteen and twenty-one years of age accused by indictment or information of a felony or misdemeanor or convicted thereof may be committed to the Preston School of Industry or to the Whittier State School, or if the offender be a female, to the California School for Girls, as in the statute provided. (Juvenile Court Law, Stats. 1915, p. 1225; for amendments thereto, see General Laws 1923, p. 1536.) The statute authorizes the establishment of a reformatory department in the Preston School of Industry wherein regular public school work and employment in useful and productive labor are prescribed. (Stats. 1921, p. 809.) According to the statutes of 1913 the girls' department of the Whittier State School was turned over to the board of trustees of the California School for Girls (Stats. 1913, p. 857), which school is now located in Ventura, Ventura County.

Either adult or minor felony prisoners may, in cases of sickness or injury, be temporarily confined in a county hospital. But with respect to clause 2 we are satisfied there is no provision of law authorizing the employment of felony prisoners "on any county road or other county work." Section 1613 of the Penal Code, however, authorizes boards of supervisors of counties to require prisoners confined in the county jail under a judgment of imprisonment to perform labor on the public works or ways in the county. This clearly refers to misdemeanants, for none other would be confined in a county jail *"under a judgment of imprisonment."*

Section 1613 was adopted in 1872. In 1911 (Stats. 1911, p. 688) section 273h was enacted wherein it is provided that offenders sentenced to the county jail in prosecutions under sections 270, 270a, 270b, 271, and 271a of the Penal Code shall be compelled to work upon the public roads or high-

ways or any other public work in the county where such conviction is had.

The policy of the law with respect to minors is further shown by the provisions of section 1388 of the same code, which reads in part: ''Final judgment may be suspended on any conviction, charge, or prosecution of a minor, for misdemeanor or felony, where in the judgment of the court in which such proceeding is pending there is reasonable ground to believe that such minor may be reformed, and that a commitment to prison would work manifest injury in the premises. Such suspension may be for as long a period as the circumstances of the case may seem to warrant, and subject to the following further provisions''—that such minor may be committed to the custody of officers or managers of any strictly nonsectarian charitable corporation conducted for the purpose of reclaiming criminal minors. This section refers to felony or misdemeanor prisoners and it may be that the legislature intended that escapes or attempts to escape from the lawful custody of such officers or managers might in certain cases constitute a violation of section 107. That section refers to ''reformatory'' in clauses 1 and 4 and ''from the custody of any officer or person'' in clauses 3 and 6. It may be mentioned in this general connection that the act of 1921 (Stats. 1921, p. 1621) relating to the establishment and administration of industrial farms or industrial road camps in the counties of the state and the commitment thereto and the discipline of persons charged with or convicted of public offenses, provided that such farms or camps shall be considered a county jail ''for all purposes not inconsistent with the provisions and purposes hereof'' and provided that persons who escape or attempt to escape therefrom shall upon conviction be imprisoned in a state prison for not less than one year nor more than five years, or in the county jail or industrial farm for not to exceed one year.

It is clear from the foregoing that if section 107 may be construed as having a comma or colon after the words ''every prisoner,'' and a semicolon after the words ''county hospital'' in clause 1, and clauses 2 and 5 are confined to misdemeanor prisoners, the conclusion is inescapable that the section contemplates escapes or attempted escapes by both felony and misdemeanor prisoners.

But without regard to the suggested punctuation, we think the amendment is not open to any construction other than that section 107 as amended covers escapes and attempted escapes of felony and misdemeanor prisoners. Petitioner insists, however, that the action of the legislature in amending the section clearly shows an intention to confine its provisions to escapes or attempts to escape of felony prisoners.

It will be observed that there is a repetition in clauses 2 and 3 of the words "who is," as used in clause 1, thus indicating a further classification of prisoners—1, felony prisoners; 2, misdemeanor prisoners; and, 3, both classes of prisoners. The same classification is preserved in defining the criminal acts—clause 4 being the counterpart of clause 1, clause 5 of clause 2 and clause 6 of clause 3.

Thus considered it is plain that the substitution of the words "who is" for the word "or" between the words "felony" and "confined" in clause 1 had the effect of limiting that clause to felony prisoners, and, as already suggested, if the section were limited to clauses 1, 4 and 7, petitioner's contention would prevail; but in the face of the succeeding provisions, and notably those of clauses 2 and 5, the section considered in its entirety and giving force and meaning to all its provisions is not susceptible of the construction that punishment for escapes or attempted escapes by felony prisoners was the sole purpose of the amendment.

Clause 1 includes escapes from either "jail" or "prison" and in our opinion those terms are to be read distributively throughout the section, for, while felony prisoners may be confined temporarily in a county jail, misdemeanants sentenced to imprisonment *must* serve their sentence in a county jail, unless lawfully required to do outside work for the county.

Section 1600 of the Penal Code refers to the detention of both classes of prisoners. That section reads: "A prisoner committed to the county jail for trial or for examination, or upon conviction for a public offense, must be actually confined in the jail until he is legally discharged; and if he is permitted to go at large out of the jail, except by virtue of a legal order or process, it is an escape."

[4] Moreover, sections 105 and 106 cover fully the escape of felony prisoners while undergoing punishment or being conveyed to or from the prison, and it cannot be questioned

that section 107 was intended, in the contemplation of the legislature, to take care of all other classifications of escapes or attempted escapes. It is apparent the legislature realized that felony prisoners would escape or attempt to escape under other conditions than those embraced in sections 105 and 106. Accordingly provision was made in section 107 for such escapes or attempted escapes. No reasonable theory has been advanced why the legislature would entirely preclude the conviction and punishment of escapes or attempted escapes by misdemeanor prisoners. To so hold would be to ignore the provisions of the section, especially clauses 2 and 5 thereof. We again repeat that clause 1, read alone, is confined to felony prisoners, for while the sentence of such prisoners must be served in the penitentiary, yet owing to the youth, the illness, or the injury of such prisoners they may be confined in any of the institutions named. But because of the language that follows, particularly that of clauses 2 and 5, it cannot, upon any accepted canon of construction, be held to be limited to persons charged with or convicted of a felony. The repetition of the words "or who is" as they appear in clause 2 in our opinion clearly indicates an intention to limit that clause to prisoners engaged on "any county road or other county work," and the said clause is entitled to the same independent classification as that of clause 1, clause 5, as already suggested, complementing clause 2. The words "or who is" are also repeated in clause 3, thus indicating a further classification embracing both classes of prisoners. As already stated, we have found no statutory provision under which a felony prisoner, whether charged with or convicted of a felony, may be engaged on county road or other county work, and the conclusion must therefore follow that the provision is directed alone to misdemeanor prisoners. A person charged with a felony is, prior to conviction, presumed to be innocent, and it would appear to be violative of such presumption to exact service pending the determination of the question of guilt. And if a person charged with a felony is convicted and the judgment of conviction becomes final his place is in the penitentiary, not in the county jail. In any event such service could not, except upon statutory warrant, be exacted from such a prisoner. The result of accepting petitioner's construction of clauses 2 and 5 would therefore be to place

the authorization for such work on judicial mandate rather than on statute.

In thus interpreting section 107, we have, in our opinion, strictly conformed to the rules of construction found in the provisions of the codes and as set forth in the respective contentions. [5] A statute "should always be so construed as to give a sensible and intelligent meaning to every part. . . . so as to make every provision thereof valid and effective." This we have done in giving effect to clauses 2 and 5. It is plain from those clauses that the legislature did not fail to provide for misdemeanor prisoners; and the intent being shown the statute must "then be liberally construed with the object in view of giving effect to such intent." [6] Even if the statute might be held to be susceptible of either construction, we are justified in the public interest in adopting the one favoring the punishment of all escaping prisoners. The courts will be astute to avoid a result contrary to sound sense and wise policy. [7] As was declared in the text-book from which we have quoted, "While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words." (Lewis' Sutherland on Statutory Construction, *supra*.)

[8] It cannot be maintained, particularly in view of clause 2, that the section is, when viewed in the light of the interpretation urged upon us by petitioner, "free from ambiguity," for by the language of that clause an obstacle is at once encountered in the provision for escapes or attempts to escape while engaged on county work, thus precluding the conclusion that it was intended to apply to felony prisoners. Viewed from the angle of petitioner's contentions the section cannot, therefore, be regarded as of "plain and obvious import," because that clause, like the others, must, if possible, be given effect. The freedom from ambiguity and the plain and obvious import ascribed to the section by petitioner cannot be said to inhere in its terms except upon the theory that they apply to both classes of prisoners. And while the substitution of "who is" for "or" in clause 1 does have the effect of confining its operation to felony prisoners, the limitation does not extend to the succeeding clause for the reason that such prisoners would not be engaged on a county

road or on other county work and hence could not commit a breach of custody connected with such work. The point is made that if the legislature intended that section 107 should apply to misdemeanor prisoners some such phrase as "charged with or convicted of a misdemeanor" would have been employed in the way felony prisoners are described in clause 1. [9] Undoubtedly the soundness of the interpretation we have given to section 107 would be more readily apparent if an expression corresponding with that used in clause 1 had been employed with respect to prisoners charged with or convicted of misdemeanor; but the omission to identify both classes of prisoners by corresponding phrases will not be held controlling if from the context of the statute it clearly appears, as we believe it does, that misdemeanor as well as felony prisoners were intended to come within its provisions.

Petitioner also "contends that there is a strong reason why the legislature should feel that a misdemeanor prisoner, if he escapes or attempts to escape, should not be guilty of a felony, which would be a greater crime, and subject to a greater penalty, than that for which he is held." It is true that every violation of section 107 is a felony punishable by confinement in the penitentiary. Breach of prison, either by felons or misdemeanants has always been regarded as a grave offense. The gravity of the original offense is not the only test of suitable punishment for escapes or attempted escapes. A misdemeanor prisoner escaping from a county jail or road camp after conviction of even a minor offense might cause more demoralization among his fellow-prisoners than one escaping from the penitentiary. Accordingly, by affixing a minimum term of six months and a maximum term of ten years and a fine in any sum not exceeding ten thousand dollars for escapes or attempted escapes of either class of prisoners the legislature has made it possible to regulate the quantity of punishment to meet the needs of every case. [10] It cannot be laid down as a rule binding on the legislature that a misdemeanor prisoner who escapes or attempts to escape should not be given felonious punishment. The *kind* of punishment presents a legislative and not a judicial question; it is for the courts or the state board of prison directors, as the case may be, to determine, within the limits fixed by the legislature, the *extent* of punishment.

The writ of *habeas corpus* is discharged and the prisoner remanded.

Shenk, J., Richards, J., Seawell, J., Waste, J., Lennon, J., and Myers, C. J., concurred.