COMMONWEALTH vs. ROBERT L. CORCORAN.

Essex.    May 2, 1955. — June 2, 1955.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Assault with Intent to commit Rape.*

At the trial of an indictment for assault with intent to commit rape upon a girl, a finding of guilty was warranted on all the evidence, including evidence of the defendant's operating a motor truck on a dark street late on a December afternoon and passing the girl walking on the street, of his stopping and parking the truck and approaching her, of his then making an assault on her, of the manner of the assault, of his fleeing from the scene when automobiles came along the street, and of statements subsequently made by him giving a version of the affair materially different from the version testified to by him at the trial.

INDICTMENT, found and returned on January 14, 1955. The case was heard by *Cahill*, J., without jury.

*Edward J. Bushell*, for the defendant.

*Samuel F. Hyland*, Assistant District Attorney, (*Martin C. Goldman*, Assistant District Attorney, with him,) for the Commonwealth.

COUNIHAN, J.   The defendant was indicted for an assault with intent to commit rape.   G. L. (Ter. Ed.) c. 265, § 24.   After a trial before a judge, the defendant having waived a jury, the defendant moved for a finding of not guilty.   We treat the motion as a request for a ruling that upon all the evidence a finding of guilty could not be made by the judge.   *Commonwealth* v. *Capitol Theatre, Inc.* 325 Mass. 146, 148.   The judge denied the motion, found the defendant guilty, and imposed sentence.   The case comes here upon the defendant's appeal and upon an assignment of error that the denial of his motion "was erroneous and highly prejudicial because on all the evidence it was not proven beyond a reasonable doubt that the defendant com-

Commonwealth v. Corcoran.

mitted the offence as alleged in the indictment." There
was no error.

We have before us a transcript of the testimony at the
trial. From this it appears that the victim, who was a
seventeen year old high school girl, was walking along the
left side of Highland Road in Andover at about five o'clock
in the afternoon of December 2, 1954. She was going to
her home on Highland Avenue which runs off Highland
Road. She was wearing a skirt, a sweater, and a long polo
coat which was open. She wore eyeglasses. She was carry-
ing a brief case and some books in front of her. There were
no street lights on this road and it was dark. She had been
walking on Route 125 and had turned off at the corner of
Highland Road where there was a gasoline filling station.
There was a street light at this corner, and a light in the
station. Highland Road was a narrow street with room
only for two automobiles to pass. It had a black "tarvia"
top with trees and bushes on each side. Shortly after she
turned the corner a truck passed her on Highland Road
moving in the same direction in which she was walking.
She had to move off the road to let it pass. When she was
about a quarter of a mile beyond the corner, and two to
three minutes after the truck had passed her, she saw a
man crossing the street toward her. He came up to her and
asked her where the nearest gasoline station was. She
turned and pointed to the one at the corner. He thanked
her and walked toward it. About thirty seconds later she
heard footsteps behind her. She turned and saw the de-
fendant "coming at me." He hit her and knocked her to
the ground. While she was on the ground with her skirt
up to her knees, he struck her five or six times. He got
onto the ground and got on top of her; "his body was
astride me, his knees were at my hips, and he just hit me
about the face." While on the ground she saw the lights of
an automobile coming along the road and she continued her
struggle to get up. When the defendant "got up off" her,
she got up and rushed in front of this automobile. Another
automobile was coming in the opposite direction in which

the chief of police of Andover was riding. She told him what had happened and he had a police officer drive her home. She had black and blue marks and scratches on her face and her eyeglasses were broken.

The chief of police saw a truck parked on Highland Road which was registered in the name of the defendant's employer. It had two amber colored lights on over the cab of the truck. There were no other lights on the truck. The ignition key was in the starter switch. It was parked at a point over a thousand feet from the gasoline station. The hood of the truck was warm and a police officer at the direction of the chief stepped on the starter and the motor started up. Subsequently a police officer drove the truck to the police station without any difficulty.

At about 8:30 P.M. the defendant accompanied by his foreman voluntarily came to the police station. In the presence of several police officers the chief asked the defendant if he knew why he was there. He replied, "It must be something to do with the truck." When told that a girl had been attacked in the vicinity where the truck was parked he denied any knowledge of the affair. Later he talked with the chief who testified that the defendant told him in substance that he was employed by an express company that day and that he had trouble with the truck. He decided to return to Malden, the place of his employer. He drove back on Route 125 and in the vicinity of the gasoline station at the corner of Route 125 and Highland Road in Andover he observed a girl walking along Route 125 and turn off into Highland Road. He turned into Highland Road and drove along it. At some point "he parked the truck, put out the lights, and then walked back in the direction from whence he came, came upon the girl; he asked the girl where the nearest gas station was; she told him, and then he thanked her; he walked toward the gas station; she continued walking in the direction she was going and he turned around, went back, struck the girl and knocked her to the ground; . . . he got on top of her and continued to strike her; then he saw the lights of an ap-

proaching car; he got up, ran through a field, got onto Route 125, thumbed a ride into Reading and from Reading" called his employer. The foregoing is a summary of the testimony of the police chief relative to his talk with the defendant.

At the trial the defendant testified in substance that after he had driven along Highland Road as far as Summer Street, which was approximately a thousand feet from the corner of Highland Road and Route 125, the truck stalled completely and he parked it on the side of the road and left the lights of the cab and the box lights on the truck turned on. He shut off his headlights and tail lights. He intended to go back to the gasoline station and call his office. He saw a girl coming toward him whom he had not seen before. He asked her if the nearest gas station was that at the corner. She said "Yes, it is," and he thanked her, and walked toward the station. When he was about fifteen feet away "I heard a noise behind me, turned around, and this girl had either tripped or fallen by the side of the road. I ran back to help her to her feet and when I got within, maybe a foot or two feet of the girl she started kicking and swinging at me; she grabbed ahold of my sleeve and I fell down on one knee beside her. I jumped back up onto my feet again and at this moment this car came around the corner of Summer Street; the girl got up and run out into the middle of the road waving her arms and screaming, so I figured the only thing that — . . . . Well, I got panicky and I ran across this field onto Route 125. . . . I got a ride from . . . there . . . [to] Reading Square." From there he went to his employer's place of business in Malden. Because of something his foreman told him he went with him to the police station in Andover where he talked with the chief of police and other officers.

The victim in her testimony denied that she tripped or fell down in the manner described by the defendant.

In these circumstances and upon all the evidence we are of opinion that the judge was warranted in making a finding of guilty. He could have found on the evidence of the vic-

tjm and because of the widely conflicting statements of the defendant at the police station and on the witness stand, that one of these statements was false. If he found that the statement he made on the witness stand was false, he could consider it as showing a consciousness of guilt on the part of the defendant. So too the flight of the defendant from the scene of the crime could be considered by the judge as indicative of consciousness of guilt. *Commonwealth* v. *Barber,* 261 Mass. 281, 288. *Commonwealth* v. *Leland,* 311 Mass. 447, 456. *Commonwealth* v. *Torrealba,* 316 Mass. 24, 30. See *Commonwealth* v. *Derby,* 263 Mass. 39, 46–47.

In the present case, "we are unable to say that the evidence was insufficient in law, or so slight that it was the duty" of the judge to rule as requested. *Commonwealth* v. *Hollis,* 170 Mass. 433, 436.

*Judgment affirmed.*