COMMONWEALTH *vs.* STEVEN LEROY HUGHES.

Middlesex.    December 6, 1973. — December 19, 1973.

Present:   TAURO, C.J., QUIRICO, HENNESSEY, & WILKINS, JJ.

*Escape. Imprisonment. Penal Institution. Words,* "Penal Institution," "Imprisonment."

A prisoner in a house of correction who was granted a furlough under G. L. c. 127, § 90A, as appearing in St. 1972, c. 777, § 18, and failed to return to that institution within the period of the furlough was guilty of escaping from the institution under c. 268, § 16, as amended through St. 1955, c. 770, § 82. [428-431] HENNESSEY, J., dissenting.

INDICTMENT found and returned in the Superior Court on February 1, 1973.

The case was heard by *Ford,* J.

*John F. Palmer* for the defendant.

*Terence M. Troyer,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   General Laws c. 268, § 16, as amended through St. 1955, c. 770 § 82, made[1] it a crime for a prisoner to escape or attempt to escape "from any penal institution other than the Massachusetts Correctional Institution, Framingham, or from land appurtenant thereto, or from the custody of any officer thereof or while being conveyed to or from any such institution." General Laws c. 127, § 90A, as appearing in St. 1972, c. 777, § 18, the "furlough" statute, provides that "[t]he commissioner may extend the limits of the place of confinement of a committed offender at any state correctional facility by authorizing such committed offender under prescribed conditions to be away from such

---

[1] On November 20, 1973, the Legislature amended G. L. c. 268 and broadened the scope of § 16. St. 1973, c. 1062. However, our concern today is with G. L. 268, § 16, before the amendment.

correctional facility but within the commonwealth for a specified period of time . . .. The administrator of a county correctional facility may grant like authorization to a committed offender in such facility. . . . A committed offender shall, during his absence from a correctional facility under this section, be considered as in the custody of the correctional facility and the time of such absence shall be considered as part of the term of sentence." On January 18, 1973, the defendant, Steven Leroy Hughes, a prisoner at the house of correction at Billerica, was granted a furlough for the period running from 9 A.M. to 8 P.M. on that date. He failed to return by 8 P.M. and was taken in custody the next day. Did the defendant commit the crime of escape as defined and made punishable by G. L. c. 268, § 16?

The Middlesex County grand jury indicted the defendant, using the following language: "That Steven Leroy Hughes . . . being lawfully imprisoned in the [Billerica] House of Correction . . . did break therefrom and escape." Before trial, the defendant attacked that indictment, and moved for its dismissal, on the ground that failure to return from furlough does not constitute a crime under any statute of the Commonwealth. This motion was denied subject to the defendant's exception. At the close of the Commonwealth's case, the defendant moved for a directed verdict,[2] this time arguing that, contrary to the language of the indictment, he was not "imprisoned" at the house of correction at the time of his alleged escape, having been on furlough, and therefore there was no evidence, nor could there have been, that he "did break therefrom and escape." This motion was denied, subject to the defendant's exception and the judge, sitting without a jury, found the defendant guilty of the crime of escape. The case is here on appeal pursuant to G. L. c. 278, §§ 33A-33G, with the assignments of error based on the

---

[2]This motion, although not appropriate to this case which was tried without a jury, was intended to raise the issue of the sufficiency of the evidence and we therefore treat it as a request for a ruling on that issue. *Commonwealth* v. *Carter,* 306 Mass. 141, 143 (1940). *Commonwealth* v. *Corcoran,* 332 Mass. 615 (1955). *Commonwealth* v. *Binkiewicz,* 339 Mass. 590 (1959).

Commonwealth *v.* Hughes.

denial of the defendant's motions. We hold that there was no error and that the failure to return from furlough constitutes the crime of escape as defined and made punishable under G. L. c. 268, § 16.[3]

We deal first with the contention that G. L. c. 268, § 16, did not apply to the failure to return from a furlough granted pursuant to G. L. c. 127, § 90A. General Laws c. 268, § 16, enumerated four specific circumstances of escape from correctional custody other than the Massachusetts Correctional Institution at Framingham: (1) from the "penal institution" itself; (2) "from land appurtenant thereto"; (3) "from the custody of any officer thereof"; or (4) "while being conveyed to or from any such institution." The defendant contends that none of these four circumstances existed in his case. By-passing situations (2) and (4), which are self-evidently not applicable to his case, the defendant argues that he did not "escape" from the "penal institution" itself, because he had permission to leave the Billerica house of correction. Likewise, he continues, he did not escape from "the custody of any officer thereof," since there is no evidence that during the period of his furlough he was under the custody of any correctional officer. We reject such a limited reading of G. L. c. 268, § 16. As was said in *Matter of Haines,* 195 Cal. 605, 621 (1925), "[e]ven if the statute might be held to be susceptible of either construction, we are justified in the public interest in adopting the one favoring the punishment of all escaping prisoners. The courts will be astute to avoid a result contrary to sound sense and wise policy . . . [and] '[w]hile the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words.' "

It is clear from a reading of G. L. c. 127, § 90A, that the Legislature wished to introduce the concept of "constructive custody" for purposes of defining the status of a prisoner while on furlough. "*The commissioner may extend the limits*

---

[3]See note 1, *supra.*

*of the place of confinement . . . at any state correctional facility* by authorizing . . . [the prisoner] under prescribed conditions to be away from such correctional facility but within the commonwealth for a specified period of time . . .. [The prisoner, while absent,] *shall . . . be considered as in the custody of the correctional facility*" (emphasis added). Thus, legally, a prisoner is as much in the custody of the correctional facility when he is on furlough as when he is physically within its walls. It therefore follows that if a prisoner violates the terms of his furlough, he has removed himself from the "custody of the correctional facility."

Literally, G. L. c. 268, § 16, did not make it a crime to remove oneself from the "custody of the correctional facility." The statute did, however, provide punishment for escape from the "penal institution" itself. While most likely that language was originally designed for escapes from the physical confines of the institution, it can, and indeed should, see *Matter of Haines, supra,* be construed in light of (1) the statute's over-all purpose of deterring and punishing prisoner escapes, and (2) the introduction of the concept of "constructive custody" in G. L. c. 127, § 90A. Importantly, c. 268, § 16, did not define, and thereby limit, the term "penal institution," and thus the language is open to interpretive expansion suited to changes in the area of corrections which have come about since the time of its formulation. We believe that G. L. c. 127, § 90A, brings about such a change, constructively, in the meaning of "penal institution" in the context of the furlough program with its provision that "[t]he commissioner may *extend* the limits of the place of confinement . . . at any state correctional facility" by granting a furlough (emphasis added). Conceptually, then, the Legislature authorized the commissioner or other appropriate officer to "extend the limits of the place of confinement" when, acting under this statute, he authorizes a committed offender to be away from a correctional facility, and to contract the limits upon the expiration of the time prescribed by him. We believe that it follows that any committed offender who without authority goes beyond the

limits of his place of confinement, whether the limits be as determined by the original sentence, or as extended by authority of this statute, or as contracted after the expiration of such an extension, can be held to have escaped from a "penal institution" within the meaning of G. L. c. 268, § 16. See *People* v. *Haskins,* 177 Cal. App. 2d 84 (1960); *State* v. *Furlong,* 110 R. I. 174 (1972); contra, *United States* v. *Person,* 223 F. Supp. 982 (S. D. Cal. 1963).

To adopt the defendant's argument would be to conclude that the Legislature either intended no sanction for failure to return from furlough, or was so careless as to overlook the question. We reject both theories. The defendant argues that for programs analogous to furlough, such as work release, G. L. c. 127, § 49, the Legislature has specifically defined escape and prescribed lesser penalties than those imposed under c. 268, § 16, and therefore the Legislature could not have rationally intended to treat furlough escapes under G. L. c. 268, § 16. We disagree. In the past the Legislature has indicated an awareness of, and has given its attention to, the problem of escape under liberalized custody circumstances. Thus it can reasonably be assumed that in this instance the Legislature considered excepting furlough escapes from the operation of G. L. c. 268, § 16, and rejected the idea.[4] Consistent with this assumption is the fact that G. L. c. 127, § 49, under which the commissioner may permit the release of committed offenders for participation in certain education, training or employment programs "outside a correctional facility," does not authorize the commissioner as § 90A expressly does, to "extend the limits of the place of confinement" of such persons. Sections 49 and 90A were revised simultaneously as part of the same legislative package involving correctional institutions. St. 1972, c. 777, §§ 13, 18. We must assume that the Legislature intended the

---

[4]The defendant argues that the recent amendment to G. L. c. 268, § 16, see note 1, *supra,* which expressly covers escape of persons on furlough indicates a legislative determination that prior to the amendment the statute did not cover furlough cases. We believe, however, that the Legislature, with an abundance of caution, meant only to clarify the statute. See *People* v. *Haskins,* 177 Cal. App. 2d 84, 87 (1960).

inclusion of the quoted language from § 90A to have some meaning and we must give it due effect. The absence of similar language in § 49 suggests that the Legislature thought it necessary to include in that section express language making the failure to return to the penal institution from a program outside the correctional institution punishable as an escape.

Next, the defendant argues, that if we hold G. L. c. 268, § 16, was applicable, a furlough escapee would be punished more severely than a work release escapee. This does not necessarily follow and in fact the opposite may be true. Under c. 127, § 49, failure to return from work release is punishable by a term of "*not less* than three years and not more than five years" (emphasis added) whereas under G. L. c. 268, § 16, an escape is punishable "by imprisonment in the state prison for not more than ten years or by imprisonment in a . . . house of correction for *not more* than two and one half years" (emphasis added). We need only point out that the defendant, who escaped from a house of correction, received a thirty day sentence in this case, whereas a defendant in a work release program would have received a minimum of three years.

The foregoing discussion also disposes of the defendant's second assignment of error, that he was entitled to a directed verdict because the Commonwealth offered no evidence that he was "imprisoned" at Billerica at the time of the escape, and therefore could not show that he "did break therefrom and escape." As we have said, the term "imprisoned" must be interpreted in light of the expanded concept of "custody of the correctional facility" expressed in G. L. c. 127, § 90A.

*Judgment affirmed.*

HENNESSEY, J. (dissenting). The defendant is charged with an escape in violation of c. 268, § 16, due to his failure to return from a temporary furlough authorized by c. 127, § 90A. A statement of facts was stipulated by the parties. It is not shown that the defendant fled the jurisdiction. I conclude that the judge was not warranted in entering a finding of guilty based merely upon the defendant's inaction in failing to return. "Liability for the commission of an offense may not be based on an omission unaccompanied by action unless: (a) the omission is expressly made sufficient by the law defining the offense; or (b) a duty to perform the omitted act is otherwise imposed by law." Am. Law Inst., Model Penal Code, § 2.01 (3) (Proposed Official Draft May 4, 1962).

Words, except for technical words, are to be construed according to their common and approved usage. G. L. c. 4, § 6. It is not consistent with common usage to hold that a failure to return constitutes an "escape."

General Laws c. 268, § 16, does not itself purport to make the failure to return from furlough an escape. It could not; at the time of its enactment there was no furlough program in Massachusetts. To hold that the revision of G. L. c. 127, § 90A, imported the escape statute into it by implication and so made the defendant's inaction a crime punishable by imprisonment is too strained a construction of that enactment for me to accept. There is no question that the Legislature can make such inaction an escape; I do not believe that it did so. Section 90A on its face says nothing about a prisoner's conduct. It merely authorizes the commissioner of correction to grant, and incur expenses for, furloughs for specified reasons, with or without the accompaniment of a correction officer. The final sentence deems that the furloughed prisoner "be considered as in the custody of the correctional facility and the time of such absence shall be considered as part of the term of sentence." The clear purpose of this sentence was to ensure that a prisoner on furlough would continue to receive good time credit.

Had the Legislature, by such an enactment, intended to create a crime it would have been simple to say so. In G. L.

c. 127, §§ 85 through 86G, the Legislature had provided for work release from a house of correction and other penal institutions and defined escape in these contexts. Without such a precise declaration of intent, the majority opinion amounts to legislating the creation of a crime where none existed heretofore.

The Commonwealth's argument that the Legislature could not have intended that failure to return go unpunished is unconvincing. The Legislature could well have intended that such mere failure be handled as an internal problem of prison discipline and as a matter for consideration by the parole board, leaving the escape statute to deal with cases of actual flight from the place of confinement.

In a sense the legislative intent is not relevant here. Nor is it relevant that the Legislature may have overlooked something that it intended to do. It is not enough that the Legislature may have had a certain intent; the proper steps must be taken to effectuate it. Where a statute is ambiguous it may be appropriate to seek the elusive legislative intent to interpret it. But where, as here, the statute's meaning is apparent on its face, we should not strain to distort that meaning to effectuate a supposed intent which the Legislature could easily have expressed, but did not. "We do not inquire what the legislature meant; we ask only what the statute means." Holmes, Collected Legal Papers, 207 (N. Y. 1920).

The Commonwealth points out that the defendant was forewarned that failure to return would be punished as escape, and signed a statement demonstrating this knowledge. While this no doubt resolves any due process problems of notice or vagueness that might otherwise arise, it is irrelevant to the question before us. No statement by correctional officials or prior admission by a defendant can establish a crime where none exists by law.

Criminal laws are to be strictly construed and are not to be extended by mere implications. *Commonwealth* v. *Paccia,* 338 Mass. 4, 6 (1958). In my view, that rule should be controlling here. Traditionally, penal statutes have been strictly construed in favor of the defendant. Sutherland & Horack,

Statutes and Statutory Construction (3d ed.) § 5604 (1943). "The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself." *United States* v. *Wiltberger,* 5 Wheat. 76, 95 (1820).

An appropriately strict construction of both G. L. c. 268, § 16, and G. L. c. 127, § 90A, leaves the defendant's inaction outside the prohibitions of the criminal law of Massachusetts as of the date of his trial. This legislative oversight should be remedied by the Legislature,[1] not by the court.

The trial judge correctly denied the motion to dismiss the indictment, which was proper in form to charge an escape under c. 268, § 16. The motion for directed verdict was not appropriate for filing in a case heard by a judge without a jury.[2] Nevertheless, I would treat it as effectively raising the issue that the proof did not warrant a finding of guilty. Therefore, as the stipulated facts do not establish guilt of that crime I would reverse the judgment of conviction.

---

[1] It now has been. See St. 1973, c. 1062.

[2] A request for ruling would be appropriate.