COMMONWEALTH *vs.* OSMOND E. BOONE.

Plymouth. February 5, 1985. — May 21, 1985.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Escape. Imprisonment.*

An indictment stating that on a certain date the defendant, "being lawfully imprisoned at Massachusetts Correctional Institution, Walpole (Cedar Junction) and having transferred to the Treatment Center at M.C.I. Bridgewater, did fail to return from an authorized absence, and escape," and referring on the back of the indictment to G. L. c. 268, § 16, was sufficient to charge the crime of escape from a penal institution. [853-854]

A defendant sentenced to M. C. I., Cedar Junction, and transferred to the Treatment Center at M. C. I. Bridgewater who had, pursuant to a consent decree entered in a Federal court, been given an eight-hour leave during which he was accompanied by a person who was neither a correction officer nor a police officer was not guilty of the crime of escape under G. L. c. 268, § 16, by reason of his failure to return from the leave. [854-856]

INDICTMENT found and returned in the Superior Court Department on December 15, 1982.

A motion to dismiss was heard by *William G. Young,* J., and the case was heard by *Thomas E. Dwyer,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Bruce Ferg (John G. Darrell* with him), Committee for Public Counsel Services, for the defendant.

*Mary Ellen O'Sullivan,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant was convicted of escape from a penal institution under an indictment that charged him with a violation of G. L. c. 268, § 16. He appeals, claiming that the indictment did not charge a crime of escape under G. L. c. 268, § 16, and that, in any event, the evidence did not warrant a finding of guilty. We conclude that the indictment charged a crime but that the evidence was insufficient to warrant a guilty finding.

The indictment charged that, on or about August 19, 1981, the defendant "being lawfully imprisoned at Massachusetts Correctional Institution, Walpole [Cedar Junction] and having transferred to the Massachusetts Treatment Center at Bridgewater, did fail to return from an authorized absence, and escape." The back of the indictment referred to G. L. c. 268, § 16. Section 16, as appearing in St. 1973, c. 1062, § 1, provides for the punishment of "[a] prisoner who escapes . . . from any penal institution or from land appurtenant thereto, or from the custody of any officer thereof or while being conveyed to or from any such institution, or fails to return from temporary release granted under the provisions of [G. L. c. 127, § 90A] . . . ."

The defendant moved to dismiss the indictment on the ground that G. L. c. 268, § 16, did not apply to him in the circumstances. In an affidavit in support of the motion to dismiss, the defendant recited that on February 4, 1972, he had been found guilty in the Superior Court in Suffolk County of a number of charges, including rape (G. L. c. 265, § 22), and had received a sentence of from fifteen to twenty years. On September 21, 1978, the defendant was found to be sexually dangerous and was committed to the Treatment Center at M. C. I. Bridgewater (Treatment Center), for a term of from one day to life. See G. L. c. 123A, § 6. On August 19, 1981, he was granted a release from the Treatment Center by the administrator but failed to return on time. He stated that he believed he was granted the release pursuant to a Federal court consent decree.

The judge who heard the motion to dismiss included in his memorandum and order the undisputed facts that on August 19, 1981, the defendant, accompanied by a security guard, visited his mother, and, while returning to the facility, became separated from the guard and did not return to the facility until after his arrest in California. The motion judge ruled that the defendant could be prosecuted under § 16 for an escape "from a 'non-correctional' or 'non-penal' facility." He did not deal explicitly with the question whether an inmate of the Massachusetts Correctional Institution at Cedar Junction transferred to the Treatment Center under G. L. c. 123A, § 6, as a sexually dangerous person, and released temporarily from the Treatment

Center could properly be found guilty of escape under G. L. c. 268, § 16.

The case was tried before another judge on a statement of agreed facts. The statement of agreed facts is substantially consistent with the facts previously recited, but amplifies those facts in certain respects. The administrator of the Treatment Center granted the defendant an eight-hour release on August 19, 1981, consistent with the terms of a 1978 Federal court consent decree in a civil action against the Massachusetts Commissioner of Correction. See *Williams* v. *Lesiak,* No. 72-571-G (D. Mass. Jan. 16, 1978). The purpose of the release was to permit the defendant to attend a family gathering in honor of "his brother who had returned home from the military." He was accompanied by a person who was neither a correction officer nor a police officer. After the family gathering, on the return trip to the Treatment Center, the defendant asked to stop at a supermarket to purchase some meat. The defendant was allowed to enter the supermarket alone, and disappeared. He did not return to the Treatment Center at the appropriate hour. The defendant was arrested in California on March 4, 1982.

The trial judge denied the defendant's motion for a required finding of not guilty. He found the defendant guilty and sentenced him to from three to five years at M.C.I., Cedar Junction, the sentence to be served from and after the sentence he was then serving.

1. The defendant first argues that the indictment was defective and should be dismissed because it did not allege the crime of escape under G. L. c. 268, § 16.[1] It is true that the indictment does not recite or track language in § 16. We construe the indictment, as did the motion judge, as alleging an escape by a prisoner from a penal institution. The Commonwealth does not contend that the indictment charges the defendant with

---

[1] The question whether an indictment charges a crime may properly be raised on appeal, even if it was not raised below, and must "be noticed by the court at any time." G. L. c. 277, § 47A. See *Commonwealth* v. *Andler,* 247 Mass. 580, 582 (1924). See also *Commonwealth* v. *Palladino,* 358 Mass. 28, 31 (1970).

escape "from land appurtenant" to a penal institution, or with escape "from the custody of any officer thereof,"[2] or with escape "while being conveyed to or from any such institution,"[3] or with escape by failing "to return from temporary release granted under [G. L. c. 127, § 90A]."[4] Construed as alleging that the defendant was a prisoner who escaped from a penal institution, the indictment charges a crime.

2. Although the indictment alleges a crime, the agreed facts do not warrant a finding that the defendant was guilty of that crime. For the purposes of this case, we shall assume, without deciding, that a person, such as the defendant, convicted of crimes and sentenced to M.C.I., Cedar Junction, and then transferred to the Treatment Center, pursuant to G. L. c. 123A, § 6, is a "prisoner" within the meaning of the word in G. L. c. 268, § 16. See *Commonwealth* v. *Reed,* 364 Mass. 545, 548 (1974). We shall similarly assume that the Treatment Center is a "penal institution" within the meaning of those words in § 16. See *Commonwealth* v. *Hughes,* 364 Mass. 426, 429 (1973). The problem remains that the defendant did not escape from the Treatment Center itself but while on authorized absence. Certainly by its terms § 16 does not deal with or refer to escape while on an authorized absence (except for a temporary release pursuant to G. L. c. 127, § 90A).

This court, as the motion judge correctly noted, has gone far to extend the reach of § 16 to cover a variety of situations in which a prisoner escaped while not held within a penal insti-

---

[2] There is no claim (or proof) that the person who accompanied the defendant was an officer of a penal institution.

[3] Although an indictment alleging an escape while being conveyed to or from such an institution might apply to the circumstances of this case, the Commonwealth does not rely on that clause. We express no opinion whether a new indictment alleging such a violation of § 16 would now be appropriate.

[4] The defendant, a convicted rapist, could not properly have been granted a temporary release or a furlough pursuant to G. L. c. 127, § 90A, if only for the reason that the approval of the Commissioner of Correction was required. *Devlin* v. *Commissioner of Correction,* 364 Mass. 435, 443 (1973). The indictment did not allege a temporary release but rather an unauthorized absence without specification of the authority for the authorized absence. The authorization presumably was the Federal court consent decree.

tution. See *Commonwealth* v. *Hughes, supra; Commonwealth* v. *Reed, supra; Commonwealth* v. *Best,* 381 Mass. 60, 63 (1980). In each of these cases, however, there was a statute other than § 16 on which the court relied as indicating a legislative intent to treat such a prisoner as nevertheless constructively within a penal institution. In the *Hughes* case, a prisoner was on furlough pursuant to G. L. c. 127, § 90A, and failed to return seasonably. Although, as applicable to that case, § 16 had not yet been amended to refer to escape while on a furlough pursuant to G. L. c. 127, § 90A (see St. 1973, c. 1062, § 1), the court construed language in § 90A, allowing the commissioner to "extend the limits of the place of confinement" and considering the prisoner "as in the custody of the correctional facility" as sufficient to warrant a finding that the prisoner escaped from a penal institution. *Commonwealth* v. *Hughes, supra* at 428-430. Similarly, in the *Reed* case, two prisoners sentenced to the Massachusetts Correctional Institution at Framingham had been transferred to Westborough State Hospital and had left that hospital without authorization. Because of language in G. L. c. 127, § 119, as appearing in St. 1967, c. 258, § 2, stating that during such time a prisoner "shall . . . be considered as in the custody of the officer having charge of the prison," this court held that a prisoner could properly be convicted of escape under G. L. c. 268, § 16A (since repealed by St. 1973, c. 1062, § 2). *Commonwealth* v. *Reed, supra* at 547-548.[5] Finally, in the *Best* case, we upheld a conviction for escape where the prisoner was participating in a work release program because, under G. L. c. 127, § 86F, an inmate who leaves his place of employment "shall be held to have escaped from" his place of confinement. *Commonwealth* v. *Best, supra* at 63.

In the case before us, we have no statute, complementing § 16, stating that the defendant was in constructive confinement. To create such a fiction on the language of § 16 alone runs

---

[5] Both the *Hughes* and *Reed* opinions produced dissents arguing that the court was unduly extending the scope of a criminal statute. See *Commonwealth* v. *Hughes, supra* at 432-434 (Hennessey, J., dissenting); *Commonwealth* v. *Reed, supra* at 548-550 (Hennessey, J., dissenting).

contrary to the usual tenet of strict construction of a criminal statute. We have no doubt that the law should provide a penalty for what the defendant did. No statute, or combination of statutes, however, does so. We suggest that the Legislature may wish to enact a comprehensive statute to embrace within the crime of escape the unauthorized departure or escape of a prisoner during any of the many circumstances under which prisoners (and perhaps others held in confinement) today may lawfully be outside the walls of an institution.

The case is remanded to the Superior Court for entry of a judgment of not guilty.

*So ordered.*