Rachal, petitioner.

JOSEPH GERARD RACHAL, petitioner
(and a companion case[1]).

Nos. 87-693 & 87-752.

Norfolk. October 9, 1987. — December 3, 1987.

Present: ARMSTRONG, DREBEN, & KASS, JJ.

*Imprisonment*, Good conduct deductions, Escape. *Escape. Statute*, Con-
struction. *Practice, Criminal*, Sentence. *Due Process of Law*, Right to
hearing.

The provisions of G. L. c. 127, § 129, that disallow statutory "good time"
deductions from a sentence of imprisonment resulting from conviction
of a crime committed by a prisoner "confined in a correctional institu-
tion," were applicable to offenses committed by a prisoner on furlough,
regardless of such violation of the terms and conditions of the furlough
that might constitute an escape from confinement. [129-130]
The aggregated sentences of a prisoner were correctly credited by the De-
partment of Correction with all time served on an invalidated conviction,
and no circumstances warranted a further credit of statutory good time
earned on the invalidated sentence. [130-131]
No hearing was required to be accorded a prisoner when the Department
of Correction recalculated his windup release date as mandated by G. L.
c. 127, § 129, to correct an error in an earlier calculation. [131-132]

PETITION for a writ of habeas corpus filed in the Superior
Court Department on March 3, 1987.

The case was heard by *Guy Volterra*, J.

PETITION for a writ of habeas corpus filed in the Supreme
Judicial Court for the county of Suffolk on May 28, 1987.

The case was transferred to the Appeals Court by *Paul J.
Liacos*, J., and was consolidated with the claim of appeal in
the earlier proceeding.

[1] The companion case is a second petition for a writ of habeas corpus,
filed originally in the Supreme Judicial Court and transferred by a single
justice of that court to this court pursuant to G. L. c. 211, § 4A. By order
of a single justice of this court the second petition was treated as a supple-
mental claim of appeal from the dismissal of the original petition by a judge
of the Superior Court, and the two claims of appeal were consolidated.

*Bernard Grossberg* for the petitioner.

*Michael Cohen* for the respondent.

ARMSTRONG, J.  This is a petition for a writ of habeas corpus, whereby the petitioner, Rachal, claims that the Department of Correction has erroneously computed his release date and that, under the applicable statutes concerning deductions from sentence, he is presently entitled to release. The department computes his release date as November 25, 1988.[2]

Rachal's criminal career, so far as pertains to this petition, is as follows. He was arrested July 14, 1968, for homicide, and he pled guilty to murder in the second degree in May, 1969. He was sentenced to life and given credit for 193 days' jail time (making the commencement date of the sentence November 2, 1968). In October, 1974, while on furlough[3], the defendant embellished his record by adding an armed robbery and two lesser offenses. The sentence for the armed robbery was seven to twelve years, to commence from and after the murder sentence. The lesser offenses drew shorter concurrent sentences which were also to commence from and after the murder sentence. On May 14, 1979, a judge ordered a new trial on the murder indictment, based on constitutional infirmities in the acceptance of Rachal's guilty plea in May, 1969. Thus, on May 14, 1979, Rachal was held on, and began to serve, the "from-and-after" sentences for the crimes committed while on furlough.

In September, 1979, Rachal pled guilty (on the original murder indictment) to manslaughter. He was sentenced to eleven and one-half to twelve years, with credit for all time served on the murder sentence plus an additional 137 days (so as to make the effective date of the sentence July 14, 1968, the date of his original arrest). The new sentence was not to be served concurrently with the sentences for the offenses committed while on furlough. In December, 1981, Rachal escaped and

---

[2] Subject to possible reduction based on any earned good time credits (G. L. c. 127, §§ 129A, 129C, 129D) accruing after March, 1987.

[3] See G. L. c. 127, § 90A, as appearing in St. 1972, c. 777, § 18, and *Commonwealth* v. *Hughes*, 364 Mass. 426 (1973).

was not taken into custody again until May, 1984, having been at large for a period of 876 days.

Based on that record, the department computes Rachal's windup date (as of March, 1987) in this manner:

| | |
|---|---|
| Effective commencement date of time served: | July 14, 1968 |
| Release date based on aggregate (24 years) of the maximum terms of the manslaughter conviction (12 years) and the armed robbery conviction (12 years): | July 13, 1992 |
| Add 876 days "dead time" resulting from escape in 1981: | December 6, 1994 |
| Subtract 1,800 days statutory good time (G. L. c. 127, § 129) computed on the manslaughter maximum sentence and credited at the rate of twelve and a half days for each month: | January 1, 1990 |
| Subtract 387 days for earned good time (G. L. c. 127, § 129D) and 15 days for blood donations (G. L. c. 127, § 129A), earned through March, 1987: | November 25, 1988 |

The department did not subtract statutory good time based on the twelve year maximum term of the armed robbery sentence (it would amount to 1,800 days) because that crime was committed by Rachal while on furlough. In this the department relied on a provision of G. L. c. 127, § 129, as amended through St. 1967, c. 379: "If, during the term of imprisonment of a prisoner confined in a correctional institution of the Commonwealth, such prisoner shall commit any offense of which he shall be convicted and sentenced, he shall not be entitled to any deductions [for statutory good time] from the new sentence or sentences of imprisonment."

Rachal makes a sinister but not implausible argument why the quoted provision of § 129 is inapplicable to his case. He concedes, as he must in light of G. L. c. 127, § 90A,[4] and *Commonwealth* v. *Hughes*, 364 Mass. 426 (1973), that a prisoner on furlough is "a prisoner confined in a correctional institution." Compare *Nimblett* v. *Commissioner of Correction*, 20 Mass. App. Ct. 988 (1985). He contends, however, that his confinement ended before he committed the armed robbery and the related offenses, this by virtue of the fact that the conditions of his furlough restricted him to Suffolk County. He committed the robbery in Middlesex County.[5] *Commonwealth* v. *Hughes* held (at 429) "that if a prisoner violates the terms of his furlough, he has removed himself from the 'custody of the correctional facility,'" and has thus escaped within the meaning of G. L. c. 268, § 16 (the general statute making escape from a penal institution a crime[6]). If he had escaped, Rachal argues, he was no longer "confined in a correctional institution" and thus was entitled to statutory good time credits for crimes committed after the escape.[7] It is irrelevant, on this view, that he was not prosecuted for the escape, because he might have been.

---

[4] Section 90A (as appearing in St. 1972, c. 777, § 18), the furlough statute, authorizes the Commissioner of Correction to "extend the limits of the place of confinement . . . at any state correctional facility by authorizing . . . [the prisoner] under prescribed conditions to be away from such correctional facility but within the commonwealth for a specified period of time . . . . [The prisoner, while absent,] shall . . . be considered as in the custody of the correctional facility . . . ." See *Commonwealth* v. *Hughes*, 364 Mass. at 428-429.

[5] We know from the record before us that the robbery and related offenses were prosecuted in Middlesex County. The record does not disclose the terms of the furlough. For purposes of decision we assumed that the facts are as Rachal represents them to be, the department not contending otherwise.

[6] Prior to its amendment by St. 1973, c. 1062, G. L. c. 268, § 16, did not specifically provide that failure to return from a temporary release constituted an escape.

[7] Rachal's contention is somewhat bolstered by a concession made by the department in response to questions at argument: that it would probably not apply the § 129 exception to sentences imposed for offenses committed by

Courts normally shrink from construing laws in a manner that would reward wrongdoing. The reason is that, in common experience, a legislature does not intend to reward wrongdoing (see *Commonwealth* v. *A Juvenile*, 16 Mass. App. Ct. 251, 257 [1983]), and a court, in construing a law, tries to apply it as it thinks the legislature probably intended it to be applied. Section 129 is susceptible of a construction not "contrary to sound sense and wise policy," *Hughes*, at 428, quoting from *Matter of Haines*, 195 Cal. 605, 621 (1925). Thus, we read the exception in § 129 to apply to any prisoner who has by law been confined to a correctional institution of the Commonwealth and to apply to such a prisoner "during the term of [his] imprisonment" (as opposed to after his release, either due to the expiration of his sentence or due to release on parole[8]). By this interpretation statutory good time does not apply to offenses committed during a furlough, whether or not the prisoner has violated the conditions of the furlough.[9]

Rachal also contends that under the principle of fairness applied in *Lynch, petitioner*, 379 Mass. 757, 761 (1980), he should be credited with statutory good time of 975 days computed on three years and nine months (approximately) that he served on the invalidated murder conviction beyond the windup date that would have applied to the eleven and a half to twelve year sentence for manslaughter.[10] The department, as a result of

runaway prisoners who had escaped in the traditional, over-the-wall, sense. That concession may be improvident; so far as we have discovered, no decision and no departmental regulation requires that result. In any event the concession is not binding on the court. See *Commonwealth* v. *Clarke*, 350 Mass. 721, 722 (1966), citing *Loring* v. *Mercier*, 318 Mass. 599, 601 (1945).

[8] Section 129 makes separate provision for a person "who has failed to observe all the rules of his parole," providing that he is not to be credited with good time for the first six months after his return to custody.

[9] It is thus unnecessary to determine whether Rachal effected an escape merely by entering Middlesex County, regardless of whether he had an intention to return from the furlough or not.

[10] The computation is approximately as follows: Treating the commencement of the murder sentence as July 14, 1968 (it was actually November 2, 1968), Rachal figures that he had served ten years and ten months before his guilty plea was declared invalid on May 14, 1979. On the replacement

aggregating the sentences, has in effect credited Rachal with the three years, nine months excess by treating it as time served on the armed robbery sentence. The department correctly takes the position that it would violate § 129 if it were to credit good time to time served on an offense committed by a prisoner during his term of imprisonment. The decisive factor in the *Lynch* case was that "the petitioner was held for approximately thirteen months in violation of his constitutional rights while he was serving no other sentence." *Id.* Good time was allowed as a compensation for that otherwise irreparable wrong. No similar wrong occurred in this case, Rachal having received full credit, on the consecutive sentences for manslaughter and armed robbery, for all the time served on the invalidated murder sentence.[11]

As support for his final contention, that the department, without granting him a hearing, unlawfully took away statutory good time that had already been allowed on the armed robbery sentence,[12] Rachal relies on the principle of such cases as *Wolff*

---

sentence for manslaughter, the maximum term of which was twelve years, he was entitled to statutory good time of 1,800 days (12 years x 12 months x 12 ½ days per month), or four years and eleven months, approximately, with the result that he would have been released after serving seven years and one month, approximately.

[11] The related argument that Rachal should be treated as having completed his term of imprisonment before he committed the armed robbery (an argument based on Rachal's crediting himself with the disputed 975 days of good conduct time at the outset of his first term of imprisonment) and thus should be treated as if he were not confined in prison when he committed the armed robbery runs afoul of the holding in *Lynch, petitioner*, 379 Mass. at 760-761.

[12] Rachal relies here on an interoffice memo that seems to indicate that, when Rachal's murder conviction was vacated and he started to serve the concurrent sentences for armed robbery and the related offenses, an entry was made in his file that he was entitled to 1,800 days statutory good time thereon. Later, when he was convicted of manslaughter and the sentences were aggregated for purposes of determining his windup date, the error was corrected. The memo does not indicate whether Rachal was given notice at either time; but a requirement of such notice seems implicit in the statutory scheme whereby statutory good time is credited to a prisoner when he commences his sentence for the purpose of encouraging his good conduct in prison. See *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole*, 376 Mass. 659, 661 (1978); *Burno* v. *Commissioner of Correction*, 399 Mass. 111, 114 (1987).

v. *McDonnell*, 418 U.S. 539, 557-558 (1974), and *Morrissey* v. *Brewer*, 408 U.S. 471, 481-482 (1972). For Massachusetts cases applying that principle, see *Nelson* v. *Commissioner of Correction*, *Real* v. *Superintendent, Mass. Correctional Inst.*, *Walpole*, and *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole*, 390 Mass. at 379, 399, and 409, respectively (1983). These cases, in the context of alleged disciplinary violations, hold that a prisoner may not be deprived of statutory good time unless he is accorded a prior (albeit rudimentary) hearing. In that context the deprivation depends for its validity on factual determinations on which the department has the burden of proof. When, however, the determination to be made involves only the application of the law to undisputed facts, a prior hearing is not necessarily required. See *Swift* v. *Ciccone*, 472 F.2d 577, 578 (8th Cir. 1972). Compare *Nawn* v. *Selectmen of Tewksbury*, 4 Mass. App. Ct. 715, 718 (1976); *Jermain* v. *Regents of Higher Education*, 23 Mass. App. Ct. 428, 432 (1987). Here the department had no discretion in applying the law. Compare *Mello* v. *Mayor of Fall River*, 22 Mass. App. Ct. 974, 976 (1986). This case is very different from *Haygood* v. *Younger*, 769 F.2d 1350, 1352-1353, 1356-1358 (9th Cir. 1985), where, on the facts found by the jury, the defending State officials were on notice that their method of computing the terminal date of certain sentences was (or might well be) erroneous under State law and, with deliberate indifference to the prisoner's substantial rights (he was imprisoned for five years after the terminal date of his sentence), failed to accord him a hearing. There the prison officials' practice was in violation of State law. Here the department's application of § 129 was, as we have held, in accordance with the requirements of that law. A hearing is not required when the department computes windup dates by applying the statutory mandates to established facts. Nor is a hearing required when the department merely corrects an error in an earlier calculation.

*Petition dismissed.*