NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1668                                     Appeals Court

COMMONWEALTH vs. KEVIN PORTER.

No. 13-P-1668.

Middlesex.     December 8, 2014. - July 30, 2015.

Present: Kafker, Grainger, & Agnes, JJ.

Escape. Imprisonment, Escape. Penal Institution. Statute, Construction. Practice, Criminal, New trial, Plea.

Complaint received and sworn to in the Lowell Division of the District Court Department on August 27, 2007.

A motion for a new trial, filed on August 29, 2012, was heard by Patricia A. Dowling, J.

Leslie B. Salter for the defendant.
Randall F. Maas, Assistant District Attorney, for the Commonwealth.

AGNES, J. This case presents a question not previously addressed by the Supreme Judicial Court or this court about the scope of the statute which punishes an escape or an attempted escape by "[a] prisoner of any penal institution." G. L.

c. 268, § 16.[1]  In particular, we are asked to determine whether

a person serving a house of correction sentence, which was

ordered to be served on weekends, see G. L. c. 279, § 6A,[2] who

fails to report by 6:00 P.M. on a particular weekend, as

required by the terms of his sentence, has "escaped" within the

---

[1] General Laws c. 268, § 16, as appearing in St. 1993, c. 376, reads as follows:  "A prisoner of any penal institution including a prisoner who is held in custody for a court appearance or a person committed under the provisions of [G. L. c. 123A, § 5 or § 6,] to a treatment center or branch thereof described in [G. L. c. 123A, §§ 2 and 4,] or a prisoner committed to any jail or correctional institution under a lawful order of a court, who escapes or attempts to escape from any such institution or from land appurtenant thereto, or from any courthouse or from land appurtenant thereto or from the custody of any officer thereof while being conveyed to or from said institution, center or branch, or fails to return from any temporary release from said institution under the provisions of [G. L. c. 127, § 90A,] or fails to return from any temporary release from said institution, center or branch, may be pursued and recaptured and shall be punished by imprisonment in the state prison for not more than ten years or by imprisonment in a jail or house of correction for not more than two and one-half years."

[2] General Laws c. 279, § 6A, as amended through St. 1998, c. 463, § 193, provides in relevant part as follows:  "When a person is sentenced on a first offense to imprisonment in a jail or house of correction for a term which does not exceed one year, the court may order the sentence to be served in whole or in part on weekends and legal holidays or such other periodic interval as the court may determine.  Such a sentence shall be known as a special sentence of imprisonment.  If an offender receives a special sentence of imprisonment under this section, he shall, unless otherwise provided by the sentence of the court, report to the institution to which he has been sentenced no later than 6:00 p.m. on Friday and shall be released at 7:00 a.m. on the succeeding Monday; provided, however, that if the succeeding Monday is a holiday, the offender shall not be released until 7:00 a.m. on Tuesday; and provided further, that the total time served shall be equal to the sentence imposed. . . ."

meaning of § 16 because he "fail[ed] to return from any temporary release from said institution."  G. L. c. 268, § 16. For the reasons that follow, we answer that question in the affirmative, and we affirm the order denying the defendant's motion to withdraw his guilty plea.

Background.  The essential facts are not in dispute. On December 14, 2007, the defendant, Kevin Porter, pleaded guilty to one count of escape from a penal institution in violation of G. L. c. 268, § 16, and was sentenced to ten days in a house of correction, to be served consecutively after completion of a sentence he was then currently serving.[3]  At the time of his plea, the defendant was serving a house of correction sentence of one year, six months to serve, with the balance suspended for eighteen months.  The sentencing judge specifically had ordered that sentence to be served on weekends, beginning on August 3, 2007. See G. L. c. 279, § 6A.  On Friday, August 24, 2007, the defendant failed to appear by 6:00 P.M. to serve his weekend sentence as required by G. L. c. 279, § 6A.  The defendant telephoned the house of correction to warn them that he could

_____

[3] The weekend sentence law, G. L. c. 279, § 6A, as amended, see note 2, supra, under which he was then serving his sentence, provides in part that "[i]f while serving such a special sentence, such person is convicted of a subsequent crime other than a nonmoving motor vehicle violation, the terms of said special sentence shall be rescinded and said person shall complete the balance of his original sentence consecutively in the jail or house of correction in which he has been serving said special sentence."

not appear at the scheduled time.  The defendant returned to the house of correction on Saturday, August 25, 2007, at 7:15 P.M. and was taken into custody.[4]

Discussion.  On August 29, 2012, the defendant filed a motion for a new trial seeking to withdraw his guilty plea to the escape charge.  See Commonwealth v. Penrose, 363 Mass. 677, 680-681 (1973) (motion for new trial is proper vehicle to request to withdraw plea of guilty).  The defendant contends that under the statutory definition of the offense the escape must be from a jail or house of correction or from the custody of a correction officer; in other words, that unless a person is in a penal institution or in the "custody" of a correction officer, his conduct in failing to appear to serve a weekend sentence is a violation of a court order and may give rise to a proceeding for contempt, but is not an "escape" under G. L. c. 268, § 16.  As a result, he maintains that there was no factual basis for his guilty plea because, he argues, the actions alleged here do not satisfy all the elements of the

---

[4] According to a disciplinary report of the Middlesex County sheriff's office, dated August 24, 2007, at 10:24 P.M., which is part of the record on appeal, "[a]t approximately 4:50 pm I/M Kevin Porter called this Captain and stated he will be 45 minutes late for his weekend sentence.  This Captain called I/M Porter's girlfriend Natasha Barnhill at 6:45 pm and 7:15 pm to have I/M Porter call this Captain or report for his weekend sentence.  At approx 8:01 pm I/M Porter had not arrived at BHOC [Billerica house of correction] and was declared an escape. EOR."

crime set out in G. L. c. 268, § 16.  See Commonwealth v. Palladino, 358 Mass. 28, 31 (1970) ("A conviction on an indictment that charges no crime would be sheer denial of due process"); Commonwealth v. Wilson, 72 Mass. App. Ct. 416, 418 (2008) ("A jurisdictional defect may be raised at any time . . . and is not waived by the defendant's guilty plea").

The defendant contends that his position finds support in the text of G. L. c. 268, § 16, which applies to "[a] prisoner of any penal institution" and to "a prisoner committed to any jail or correctional institution who escapes . . . from the custody of any officer thereof . . . or fails to return from any temporary release from said institution under the provisions of [G. L. c. 127, § 90A,] or fails to return from any temporary release from said institution, center or branch . . . ." According to the defendant, the reference in § 16 to G. L. c. 127, § 90A,[5] which authorizes the Commissioner of Correction

---

[5] General Laws c. 127, § 90A, as amended through St. 1989, c. 341, § 74, provides in pertinent part as follows:  "The commissioner may extend the limits of the place of confinement of a committed offender at any state correctional facility by authorizing such committed offender under prescribed conditions to be away from such correctional facility but within the commonwealth for a specified period of time, not to exceed fourteen days during any twelve month period nor more than seven days at any one time;  . . . . The administrator of a county correctional facility may grant like authorization to a committed offender in such facility.  Such authorization may be granted for any of the following purposes:  (a) to attend the

and sheriffs to give committed offenders special, temporary releases of up to seven days, not to exceed fourteen days a year, means that, other than with regard to escapes by persons who are in actual custody in a facility at the time of the act, the escape statute applies only to committed offenders who receive one of these special, temporary releases.

The defendant's reading of G. L. c. 268, § 16, disregards prior precedents interpreting § 16 and is contrary to the plain meaning of the text.  First, the house of correction where the defendant was serving his weekend sentence qualifies as a "penal institution."  Commonwealth v. Faulkner, 8 Mass. App. Ct. 936 (1979).  See Commonwealth v. Clay, 65 Mass. App. Ct. 215, 216-217 (2005), citing G. L. c. 125, § 1(d), (k).  Second, G. L. c. 279, § 6A, pursuant to which he received a sentence to be served on weekends, designates the sentence as "a special

_____

funeral of a relative; (b) to visit a critically ill relative; (c) to obtain medical, psychiatric, psychological or other social services when adequate services are not available at the facility and cannot be obtained by temporary placement in a hospital under [G. L. c. 127, §§ 117, 117A, and 118]; (d) to contact prospective employers; (e) to secure a suitable residence for use upon release on parole or discharge; (f) for any other reason consistent with the reintegration of a committed offender into the community . . . .  A committed offender shall, during his absence from a correctional facility under this section, be considered as in the custody of the correctional facility and the time of such absence shall be considered as part of the term of sentence."

sentence of imprisonment."  Moreover, the "custody" referred to in § 16 has been read to include constructive custody as well as actual custody.  Thus, the defendant was "[a] prisoner of [a] penal institution."  G. L. c. 268, § 16.  And the pertinent portion of § 16 reads that a prisoner who "fails to return from any temporary release from said institution under the provisions of [G. L. c. 127, § 90A,] or fails to return from any temporary release from said institution . . . shall be punished by imprisonment . . ." (emphasis supplied).  While the first reference in § 16 to "temporary release" explicitly refers to G. L. c. 127, § 90A, the next reference to "temporary release" in the following phrase ("or fails to return from any temporary release from said institution") does not.  It is a basic canon of statutory construction that every word in a statute should be given meaning and that no word is considered superfluous.  See Casa Loma, Inc. v. Alcoholic Bevs. Control Commn., 377 Mass. 231, 234 (1979); Boone v. Commerce Ins. Co., 451 Mass. 192, 196 (2008).  Thus, it is apparent that the Legislature in the two separate phrases was referring to two separate situations, the second of which applies here.

Further, we note that in Commonwealth v. Hughes, 364 Mass. 426, 429 (1973) (Hughes), the Supreme Judicial Court held that G. L. c. 268, § 16, applied to a defendant who was serving a sentence of incarceration and who did not return from a furlough

granted pursuant to G. L. c. 127, § 90A, notwithstanding the fact that the version of § 16 at the time did not contain any reference to "temporary release" or to § 90A.  See G. L. c. 268, § 16, as amended through St. 1955, c. 770, § 82.  The Court reasoned, construing § 16 in light of the statute's (1) "over-all purpose of deterring and punishing prisoner escapes" and (2) the concept of "constructive custody," which the court noted was implicit in the furlough program established by G. L. c. 127, § 90A, that the language in question found in § 16 -- "[a] prisoner of any penal institution" -- should be interpreted to include both prisoners who are in actual custody as well as those in constructive custody.  Id. at 429-430.[6,7]  General Laws

---

[6] Contrast Commonwealth v. Boone, 394 Mass. 851 (1985) (person who failed to return to Massachusetts Treatment Center after administrator granted him eight-hour release pursuant to Federal court consent decree could not be prosecuted for escape under § 16, as appearing in St. 1973, c. 1062, § 1, because there was no statute independent of § 16 that provided he was in constructive confinement).

[7] In Hughes, 364 Mass. at 429-430, the court stated that "[l]iterally, G. L. c. 268, § 16, [as in effect at that time,] did not make it a crime to remove oneself from the 'custody of the correctional facility.' The statute did, however, provide punishment for escape from the 'penal institution' itself. While most likely that language was originally designed for escapes from the physical confines of the institution, it can, and indeed should, . . . be construed in light of (1) the statute's over-all purpose of deterring and punishing prisoner escapes, and (2) the introduction of the concept of 'constructive custody' in G. L. c. 127, § 90A. Importantly, [G. L.] c. 268, § 16, did not define, and thereby limit, the term 'penal institution,' and thus the language is open to interpretive expansion suited to changes in the area of

c. 268, § 16, has since been amended to explicitly include a prisoner who "fails to return from any temporary release . . . under the provisions of [G. L. c. 127, § 90A,] or fails to return from any temporary release from said institution . . . ."

Hughes was followed by Commonwealth v. Best, 381 Mass. 60 (1980) (Best). There, the Court held that a prisoner serving a house of correction sentence and assigned to a prerelease center who failed to return to the center from a work release program was subject to prosecution for an escape pursuant to G. L. c. 268, § 16, even though the work release statute, G. L. c. 127, § 86F, contains language punishing those who escape from a work release program.[8] In Best, the Court reasoned that

_____

corrections which have come about since the time of its formulation. We believe that G. L. c. 127, § 90A, brings about such a change, constructively, in the meaning of 'penal institution' in the context of the furlough program with its provision that '[t]he commissioner may extend the limits of the place of confinement . . . at any state correctional facility' by granting a furlough (emphasis added). Conceptually, then, the Legislature authorized the commissioner or other appropriate officer to 'extend the limits of the place of confinement' when, acting under this statute, he authorizes a committed offender to be away from a correctional facility, and to contract the limits upon the expiration of the time prescribed by him. We believe that it follows that any committed offender who without authority goes beyond the limits of his place of confinement, whether the limits be as determined by the original sentence, or as extended by authority of this statute, or as contracted after the expiration of such an extension, can be held to have escaped from a 'penal institution' within the meaning of G. L. c. 268, § 16."

[8] General Laws c. 127, § 86F, inserted by St. 1967, c. 821, § 1, provides, in pertinent part, that "[a]ny inmate

"[e]ven though the Legislature did not repeat the 'extend the limits of . . . confinement' language of [G. L. c. 127,] § 90A, [in G. L. c. 127, § 86F,] the Legislature in § 86 did define an escape, which constituted an 'escape from any penal institution' within the meaning of G. L. c. 268, § 16," thus bringing the "conduct within the reach of § 16."  Id. at 63.

In the present case, once the defendant began to serve his six-month sentence on Friday, August 3, 2007, he was obligated under that sentence to report to the correctional institution on successive weekends until he satisfied the terms of his sentence.  The defendant's release each Monday morning was a "temporary release from said institution" within the meaning of G. L. c. 268, § 16, and during such periods, until he completed service of his sentence, he was "[a] prisoner of [a] penal institution" in constructive custody of that institution.  Cf. Hughes, 364 Mass. at 429-430.  When the defendant failed without justification to return to the institution by 6:00 P.M. on the

---

participating in such work release program and permitted to leave his place of confinement for the purpose of working in gainful employment, as herein provided, who leaves his place of employment without permission of his employer and with the intention of not returning to his place of confinement, or who having been ordered by the sheriff or the work release supervisor to return to his place of confinement neglects or refuses to do so, shall be held to have escaped from such house of correction, and shall be arrested and returned to such house of correction, and, upon conviction of such escape, shall be sentenced for a term not to exceed one year or the term for which he was originally sentenced, whichever is the lesser."

Friday in question, he, "[a] prisoner of [a] penal institution" (the house of correction) violated the provision of G. L. c. 268, § 16, punishing the "fail[ure] to return from any temporary release from said institution." This reading of § 16 is in keeping with the common and approved usage of the words "temporary release" used by the Legislature, see G. L. c. 4, § 6, Third,[9] and it also accords with the overarching legislative purpose underlying G. L. c. 268, § 16, "of deterring and punishing prisoner escapes." See Hughes, 364 Mass. at 429.[10] See also Commonwealth v. Reed, 364 Mass. 545, 547 (1974) ("[I]t is our view that, in interpreting escape statutes, there is justification for adopting a construction which permits the

---

[9] The Legislature has not defined the term "temporary release" that appears in G. L. c. 268, § 16. However, the phrase has an ordinary meaning. "Temporary" commonly means "lasting for a time only: existing or continuing for a limited time: impertinent, transitory." Webster's Third New International Dictionary 2353 (1993). "Release" commonly means "the act of liberating or freeing: discharge from restraint." Id. at 1917.

[10] Because we conclude that § 16 is not ambiguous (see note 9, supra), there is no basis for an application of the "rule of lenity." See, e.g., Commonwealth v. Coppinger, 86 Mass. App. Ct. 234, 239 (2014). Also, what has been said about the application of G. L. c. 268, § 16, disposes of the defendant's claim of ineffective assistance of counsel as there is no basis for the claim that defendant's counsel misunderstood the applicability of G. L. c. 268, § 16. See Commonwealth v. Comita, 441 Mass. 86, 90-91 (2004) (counsel is under no obligation to object or to challenge a ruling when there is minimal chance of success).

punishment of all escaping prisoners").

Order denying motion for new
trial affirmed.